IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TREADWAYS LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE TRAVELERS INDEMNITY CO., | : | |
| TRAVELERS PROPERTY CAS. CO. | : | |
| OF AMERICA, and THE CHARTER | : | |
| OAK FIRE INS. CO. | : | NO. 08-4751 |

**MEMORANDUM AND ORDER**

THOMAS J. RUETER                                                                                      May 4, 2011
Chief United States Magistrate Judge

        Presently before the court are the parties' cross motions for summary judgment: plaintiff's motion for summary judgment (Doc. No. 39) ("Pl.'s Motion"); and defendants' motion for summary judgment (Doc. No. 40) ("Defs.' Motion").[1] The court considered all documents

---

[1] Pursuant to Fed. R. Civ. P. 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has ruled that Rule 56 requires "the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson, 477 U.S. at 248. A factual dispute is material only if it might affect the outcome of the suit under governing law. Id.

        The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). To defeat summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party cannot rest on the pleadings, but rather must go beyond the pleadings and present specific facts showing that there is a genuine issue for trial. The non-moving party also has the burden of producing evidence to establish, prima facie, each element of his claim. Celotex, 477 U.S. at 322-23. "If the evidence [offered by the non-moving party] is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50. On the other hand, "if reasonable minds can differ as

submitted by the parties in support of their own motions and in opposition to the other party's motion.[2] For the reasons stated herein, plaintiff's Motion is **DENIED**, and defendants' Motion is **DENIED IN PART** and **GRANTED IN PART**.

I.   FACTUAL AND PROCEDURAL BACKGROUND

The instant litigation arises out of an insurance coverage dispute. Defendant Travelers Property Casualty Company of America ("Travelers Property") issued a commercial automobile insurance policy, policy number 3IFJ-810-635J1784 to plaintiff Treadways LLC (the "Automobile Policy"). Defendant Travelers Indemnity Company ("Travelers Indemnity") issued a worker's compensation and employer's liability policy of insurance (No. 3VIIUB-635J176-0-02) (the "WC Policy") to plaintiff. The only policy identified in the amended complaint as being at issue in this litigation is the WC Policy. See Amended Complaint. Defendants Travelers Property and Travelers Indemnity shall be collectively referred to herein as the "defendants." Defendant Charter Oak Fire Insurance Company ("Charter Oak") did not issue any policy of

---

to the import of the proffered evidence that speaks to an issue of material fact," summary judgment should not be granted. Burkett v. The Equitable Life Assurance Society of the United States, No. 99-CV-1, 2001 WL 283156, at *3 (E.D. Pa. Mar. 20, 2001). In considering a motion for summary judgment, the evidence must be considered in the light most favorable to the non-moving party, and all inferences must be drawn in that party's favor. Celotex, 477 U.S. at 322.

The standard does not change when the parties file cross-motions for summary judgment. Appelmans v. City of Philadelphia, 826 F.2d 214, 216 (3d Cir. 1987). "[T]he court must determine separately on each party's motion whether the standard to enter summary judgment has been met." Rector, Wardens & Vestrymen of St. Peter's Church v. Am. Nat'l Fire Ins. Co., 2002 WL 59333, at *3 (E.D. Pa. Jan. 14, 2002).

[2] Despite the court having cited to only a few select exhibits herein, the court considered all pleadings and documents submitted by the parties.

insurance which would apply to either of Todd Gonsar's worker's compensation or liability claim against plaintiff.[3]

On July 28, 2005, Gonsar and his wife filed a lawsuit against plaintiff in the Court of Common Pleas of Philadelphia County (the "Gonsar Litigation"). Plaintiff reported the Gonsar Litigation to defendants. Defendants admit that after the Gonsar accident, a worker's compensation claim was established under the WC Policy. (Defs.' Mem. Supp. Motion at 3.) On or about September 12, 2005, a claim was set up under the Automobile Policy. On or about September 15, 2005, defendants retained Mary Ann Hanna, Esquire, to defend plaintiff in the Gonsar Litigation. The complaint in the Gonsar Litigation was filed on April 24, 2006, setting forth two counts – fraud and misrepresentation, and loss of consortium. (Defs.' Mot. Ex. D.) On May 1, 2006, after being served with the Gonsar Litigation complaint, plaintiff sent a copy of the lawsuit to John Wright, its insurance broker. Id. Ex. E. Mr. Wright sent an email dated June 7,

---

[3] Defendant Charter Oak Fire Insurance Company issued worker's compensation and employer's liability coverage to plaintiff for states other than Pennsylvania. Defendants assert that the only Travelers entity which was involved in the defense and claim handling of the Gonsar Litigation was Travelers Property. It is undisputed that Charter Oak did not issue a policy of insurance which would apply to the instant matter or the Gonsar Litigation. Plaintiff sought to obtain coverage under the WC Policy issued by Travelers Indemnity for the Gonsar Litigation verdict after it was entered. Travelers Indemnity denied coverage and denies that it was involved in the decisions complained about by plaintiff in the instant litigation. Plaintiff asserts, however, that when it made a claim against the Automobile Policy, it also made a claim against, the WC Policy and, therefore, defendant Travelers Indemnity was involved in the action and inaction complained of in the amended complaint. See Pl.'s Mem. Supp. Mot. at 8. Defendants' request that summary judgment be entered in favor of Charter Oak dismissing plaintiff's action against Charter Oak is granted. Defendants' request that summary judgment be entered in favor of Travelers Indemnity and that that entity be dismissed from this action in its entirety is denied.

2006, to John Rigney and Jeff Norton[4] advising that: "[i]t may be wise for you to touch base with Gary [Davis of Travelers, the claim handler assigned to the Gonsar lawsuit] to get a better feel for what Travelers is doing if there are concerns. I think they are going over and above their contractual obligations but did not share that with him." Id. Ex. F. On October 6, 2006, defendants provided a written denial of coverage notice for the claim on the basis that there was no coverage concerning the accident. Id. Ex. G. Defendants agreed to continue to pay Ms. Hanna for a period of sixty days so that plaintiff could "associate new counsel." Id. In a subsequent letter dated October 24, 2006, defendants agreed to pay for a defense for a "key" deposition in mid-December 2006. Id. at H.

Ms. Hanna filed a Petition for Extraordinary Relief with the state court. The petition was denied without prejudice on December 19, 2006, and granted movant permission to request extraordinary relief in the context of a petition to withdraw counsel. Id. Ex. I. Plaintiff retained Ms. Hanna as defense counsel, and did not interview other potential counsel. Id. Ex. J. On April 26, 2007, following submission of the case on stipulated facts, the Honorable Annette Rizzo of the Philadelphia Court of Common Pleas entered judgment in favor of the Gonsar plaintiffs and against Treadways in the amount of $1,000,000.

On May 15, 2007, plaintiff asked defendants that the original claim notice be expanded to include possible employee benefit coverage under the WC Policy. Id. Exs. Q & R. On June 21, 2007, defendants denied coverage under the WC Policy. Id. Ex. S.

---

[4] At all relevant times, John Rigney was the Chief Financial Officer of plaintiff, Treadways LLC. On September 26, 2006, all of the stock of Treadways LLC was acquired by TBC Corporation. Sumitomo Corporation of America is the parent corporation of TBC Corporation. Jeff Norton is an employee of Sumitomo Corporation of America. (Pl.'s Mem. Opp. Defs.' Mot. at 5-6.)

4

On February 17, 2009, plaintiff filed an Amended Complaint against defendants asserting two counts: Count 1 – bad faith in handling the claim and the Gonsar Litigation in violation of 42 Pa. Cons. Stat. Ann. § 8371; and Count 2 – waiver and estoppel/ breach of duty to indemnify – defendants waived all defenses under the Policy. (Amended Complaint.)

## II. THE MOTIONS FOR SUMMARY JUDGMENT

### A. Count 1 – Bad Faith

The parties each contend that they are entitled to summary judgment on plaintiff's first count asserting a claim of bad faith against defendants. Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371, provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1)    Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2)    Award punitive damages against the insurer.
>
> (3)    Assess court costs and attorney fees against the insurer.

The Third Circuit Court of Appeals recently summarized the law in Pennsylvania regarding bad faith claims against insurers.

> "Bad faith" is defined as "any frivolous or unfounded refusal to pay proceeds of a policy." See Terletsky v. Prudential Prop. & Cas. Ins. Co., 437 Pa. Super. 108, 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (citations omitted). A valid cause of action for bad faith under Pennsylvania law requires clear and convincing evidence that: (1) the insurer did not have a reasonable basis for its action, and (2) the insurer knew or recklessly disregarded its lack of reasonable basis. See Keefe v. Prudential Prop. & Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000); see also Terletsky, 649 A.2d at 688 ("[B]ad faith must be proven by clear and convincing evidence and not merely insinuated."). While an insurer has a duty to investigate claims fairly and objectively, Diamon v. Penn Mut. Fire Ins. Co., 247 Pa. Super.

> 534, 372 A.2d 1218, 1226 (Pa. Super. Ct. 1977), an insurer may defeat a bad faith claim by showing that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action. See J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004) ("A reasonable basis is all that is required to defeat a claim of bad faith."). Mere negligence or bad judgment is not bad faith. Terletsky, 649 A.2d at 688.

Luse v. Liberty Mut. Fire Ins. Co., 2011 WL 477728, at *2 (3d Cir. Feb. 11, 2011). In Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994), the state court provided an expanded definition for the term "bad faith" in the insurance context:

> In the insurance context, the term bad faith has acquired a particular meaning:
>
>> Insurance. "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.
>
> Black's Law Dictionary 139 (6th ed. 1990) (citations omitted).

The "clear and convincing" standard "requires a showing by the plaintiffs that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the Defendants acted in bad faith." Aumen v. Nationwide Mut. Ins. Co., 2011 WL 1120414, at *3 (M.D. Pa. Mar. 8, 2011) (quoting Bostick v. ITT Hartford Group., Inc. 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999) (quoting Stafford v. Reed, 70 A.2d 345 (Pa. 1950))) (internal citations omitted).

Courts have clarified that bad faith may be found in circumstances other than an insured's refusal to pay. As the Third Circuit Court of Appeals explained, "'[b]ad faith is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to

6

communicate with the insured.'" Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 244 Fed. Appx. 424, 433 (3d Cir. 2007) (not precedential) (quoting Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n. 9 (3d Cir. 1999)).

**Defendants' Motion for Summary Judgment.** In the Amended Complaint, plaintiffs contend that defendants acted in bad faith in twenty-six instances. (Amended Complaint ¶ 29.) Plaintiff asserts that defendants' "lack of good faith investigation of the claim and failure to communicate coverage issues with Plaintiff Treadways is undisputed evidence of bad faith." (Pl.'s Mem. Supp. Mot. at 7.) Plaintiff identifies other evidence of bad faith to include, inter alia, defendants' failure to issue a reservation of rights letter, and failure to investigate the fraud and misrepresentation allegations made by Todd Gonsar against plaintiff in the state court complaint. Id. at 4-15.

Defendants urge that the facts of this case fail to establish a bad faith claim under Pennsylvania law. Defendants point to the following statement of the requirements of a bad faith claim:

> [S]uccess in bringing a claim of bad faith requires the insured to present clear and convincing evidence that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim.

MGA Ins. Co. v. Bakos, 699 A.2d 751, 754 (Pa. Super. Ct. 1977) (citations omitted) (emphasis added). Defendants contend that because plaintiff does not argue that defendants wrongfully denied benefits under the Policy, plaintiff cannot satisfy the first prong of the bad faith standard and the bad faith claim fails. Plaintiff does not contend that defendants wrongfully denied coverage under the Policies. See Pl.'s Mem. Supp. Mot. at 4-15. Hence, defendants had a

7

reasonable basis for denying coverage under the Policies and plaintiff's bad faith claim must fail under the statement of the elements of a bad faith claim by the court in MGA Ins. Co..

Even if plaintiff did satisfy the first requirement for a successful bad faith claim, plaintiff has failed to prove the second requirement, i.e., that the insurer knew of, or recklessly disregarded, its lack of reasonable basis in denying the claim. The list of wrongs cited by plaintiff in the amended complaint, which plaintiff alleges were improper handling of the claim and the Gonsar Litigation, and amount to violations of the Unfair Insurance Practices Act, do not support a claim of bad faith under Pennsylvania law. As stated above in Terletsky, conduct sufficient to support a bad faith claim under Pennsylvania law must import "a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." Terletsky, 649 A.2d at 688.

Plaintiff attributes the list of actions and inactions to defendants' "agents, servants, workmen and employees." (Amended Complaint ¶ 29.) However, plaintiff presents no evidence that these actions or inactions contained a "dishonest purpose," or were motivated by "self-interest or ill will." Id. At worst, considering the evidence in the light most favorable to plaintiff, the non-moving party, and drawing all inferences in that party's favor, Celotex, 477 U.S. at 322, the actions of defendants' employees were negligent. Defendants, when it appeared that coverage may be provided under the Policies, provided defense of the Gonsar Litigation and, when it was discovered that coverage was not provided, paid legal fees for two months, plus an

extended time into mid-December to provide defense for a key deposition, while plaintiff arranged for replacement counsel.[5]

Plaintiff contends that the improper conduct on the part of defendants can be attributed, at least in part, "to the unreasonable and reckless handling of Claims Director Gary Davis who was too busy with other 'priority' and 'hot' files to be bothered with Plaintiff Treadways' claim." (Pl.'s Mem. Supp. Mot. at 8-9.) In this statement, plaintiff admits that defendants' agent's alleged improper conduct was caused by Mr. Davis being distracted by work load and priority issues. Plaintiff has not proven that Mr. Davis, or any of defendants' agents, acted with the requisite dishonest purpose, self-interest, or ill will to support a bad faith claim in Pennsylvania.

Here, defendants have met their burden and shown that there is no genuine dispute as to any material fact with respect to whether defendants acted in bad faith sufficient for plaintiff to sustain a claim of bad faith under Pennsylvania law. Considering the evidence in the light most favorable to plaintiff and drawing all inferences in plaintiff's favor, plaintiff has failed to present specific facts showing that there is a genuine issue regarding its bad faith claim for trial. The evidence shows that the claims handling by defendants may have been negligent. However, plaintiff failed to present any evidence that the actions of defendants were motivated by dishonest

---

[5] In their brief in opposition to plaintiff's summary judgment motion, defendants adequately distinguish the cases cited by plaintiff from the facts in the instant matter. See Defs.' Mem. Opp. Pl.'s Mot. at 4-7. The court will not undertake that same endeavor here.

purpose, self-interest or ill will. As such, defendants' motion for summary judgment with respect to Count I of the amended complaint, must be granted.[6]

Defendants motion for summary judgment with respect to Count I of the amended complaint will be granted. Defendants have sustained their burden of proving that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law" on the bad faith claim asserted in Count I. See Fed. R. Civ. P. 56(a).

### B. Count II - Waiver and Estoppel – Breach of Duty to Indemnify

In Count II of the amended complaint, plaintiff asserts that

> Defendants waived any and all defenses under the Policy when Defendants assumed a defense of the Plaintiff Treadways by appointing counsel to represent Plaintiff Treadways, continued to provide a defense to Plaintiff Treadways even after it believed that no coverage was owed under the Policy, failed to provide a reservation of rights letter to Plaintiff Treadways, failed to provide timely notice of a coverage issue and failed to provide any notice of the possibility of excess liability.

(Amended Complaint ¶ 32.)

The law in Pennsylvania is clear that

> [O]nce a third party has raised allegations against an insured which potentially fall within the coverage provided, the insurer is obligated to defend its insured fully until it can confine the possibility of recovery to claims outside the coverage of the policy. . . .
>
> . . . Pennsylvania courts have held that an insurance company is under no obligation to defend when the suit against its insured is based on a cause of action excluded from the policy's coverage. . . . "However, if coverage (indemnification) depends upon the existence or non-existence of facts outside of the complaint that have yet to be determined, the insurer must provide a defense until such time as the facts are determined, and the claim is narrowed to one

---

[6] As plaintiff has failed to meet its burden under Fed. R. Civ. P. 56, its motion for summary judgment with respect to Count I must be denied.

10

patently outside of coverage." C. Raymond Davis & Sons, Inc. v. Liberty Mut. Ins. Co., 467 F. Supp. 17, 19 (E.D. Pa. 1979).

. . .

When the insurance company believes a claim is not covered, it may protect itself by a timely reservation of rights under the policy which fairly informs the insured of its position. Aetna Life and Cas. Co. v. McCabe, 556 F. Supp. [1342,] 1354-55 [(E.D. Pa. 1983)]. Insurers who contemplate refusing to indemnify a claim must inform their insureds so as to allow them to protect their interests and avoid detrimental reliance on indemnity. Nichols v. Am. Cas. Co., 423 Pa. 480, 225 A. 80 (1966). If an insurer undertakes to defend a claim under a reservation of rights it is not precluded from denying coverage. Brugnoli v.United National Ins. Co., 284 Pa. Super. 511, 426 A.2d 164 (1981). . . .

It is hornbook law that if an insurer assumes the insured's defense without sending the insured a reservations of rights letter or bringing a declaratory relief action, the insurer will later be precluded from denying coverage. . . . Moreover, in [Draft Sys., Inc. v.] Alspach, the court stated that if the insurer affords representation without some understanding with its insured, the carrier may later be estopped from asserting an otherwise valid coverage defense. Id. at 296.

Beckwith Machinery Co. v. Travelers Indem. Co., 638 F. Supp. 1179, 1186-87 (W.D. Pa. 1986).

A party seeking to establish an estoppel must show "an inducement by the party sought to be estopped . . . to the party who asserts the estoppel . . . to believe certain facts to exist - and the party asserting the estoppel acts in reliance on that belief." Merchants Mut. Ins. Co. v. Artis, 907 F. Supp. 886, 891 (E.D. Pa. 1995) (quotation omitted). "A determination of whether the insured relied to its detriment on an insurer's conduct requires an analysis of the facts relating to whether the party asserting estoppel has been prejudiced by the conduct of the insurer." Id. (citation omitted and emphasis added). Courts may apply estoppel "only when there is actual prejudice, such as when an insurer's failure to assert all possible defenses in a reservation of rights letter causes an insured to act to his detriment in reliance thereon." Id. (citation omitted).

11

See generally Aetna Life and Cas. Co. v. McCabe, 556 F. Supp. 1342, 1354-55 (E.D. Pa. 1983) (same).

Here, defendants denied coverage under the Automobile Policy on October 6, 2006, approximately five and one-half months after the complaint was filed in the Gonsar Litigation and approximately four months prior to the trial in the Gonsar Litigation. Defendants did not issue reservation of rights letter when it assumed defense of the Gonsar Litigation. Defendants denied coverage under the WC Policy on June 21, 2007, after the judgment was entered in the Gonsar Litigation. Defendants did not issue a reservation of rights letter. In paragraph 33 of the amended complaint, plaintiff lists eight ways in which it suffered prejudice as a result of defendants' actions and inactions.

Neither plaintiff nor defendants presented evidence establishing no genuine dispute as to any material fact entitling it to judgment as a matter of law. Fed. R. Civ. P. 56(a). For example, plaintiff asserts that, in reliance upon the actions and inactions of defendants, it had inadequate time to determine if new trial counsel was needed. (Amended Complaint ¶ 33.) As pointed out by defendants, however, the evidence shows that as early as June 7, 2006, plaintiff was aware of coverage concerns. See June 7, 2006 email from John Wright, plaintiff's insurance broker, to plaintiff. Moreover, David Zolnowski[7] acknowledged that plaintiff had the option to replace Ms. Hanna, but chose not to interview other candidates. (Defs.' Motion Ex. J.) While plaintiff asserts that the upcoming trial date prevented it from replacing Ms. Hanna, the state court judge, in her order dated December 19, 2006, more than two months after defendants

---

[7] David Zolnowski is an employee of TBC Corporation. (Pl.'s Mem. Opp. Defs.' Mot. at 5-6.) See supra n. 4.

denied coverage, permitted plaintiff to request extraordinary relief if a petition to withdraw counsel was filed. (Defs.' Motion Ex. H.) The record reveals a genuine dispute of material fact as to whether plaintiff suffered prejudice as a result of defendants' actions and inactions. The same can be said with respect to the other seven elements of prejudice alleged by plaintiff in the amended complaint. (Amended Complaint.)

Shifting the burdens and considering defendants' Motion, defendants also failed to demonstrate the absence of a genuine dispute of material facts with respect to Count II of the amended complaint. Defendants provided a defense for plaintiff in the Gonsar Litigation, but did not issue reservation of rights letters. Plaintiff produced evidence that it did not seek to obtain/ check coverage under other insurance policies it carried in reliance, plaintiff contends, upon defendants' defense of the Gonsar Litigation. Similarly, plaintiff asserts that in reliance upon plaintiff's actions and inactions, it, inter alia, did not seek independent liability counsel. Defendants failed to carry their burden under Fed. R. Civ. P. 56(a) to demonstrate no genuine dispute of material fact with respect to Count II of the amended complaint.

In sum, the question of whether plaintiff relied to its detriment on defendants' conduct requires an analysis of disputed issues of fact. Such an analysis of the disputed facts is for the jury, not the court. For these reasons, both plaintiff's Motion and defendants' Motion will be denied.

An appropriate Order follows.

BY THE COURT:

/s/ Thomas J. Rueter
THOMAS J. RUETER
Chief United States Magistrate Judge